**GOLDEN TRADE, S.r.L. and Greater Texas Finishing Corporation, Plaintiffs,**

v.

**LEE APPAREL COMPANY and Blue Bell, Inc., Defendants.**

**GOLDEN TRADE, S.r.L., et al., Plaintiffs,**

v.

**JORDACHE, et al., Defendants.**

Nos. 90 Civ. 6291 (JMC), 90 Civ. 6292 (JMC).

United States District Court, S.D. New York.

Aug. 17, 1992.

See also 143 F.Supp. 504, 143 F.Supp. 508, and 143 F.Supp. 512.

**516**

William F. Lee, Jack J. Falvey, Jr., Hale and Door, Boston, Mass., William G. McElwain, Gilbert B. Kaplan, Hale and Dorr, Washington, D.C., Martin F. Evans, Debevoise & Plimpton, New York City, for plaintiffs.

Robert A. Spiegelman, Lori B. Cohen, New York City, John A. Conkle, William C. Conkle, Conkle & Olestein, Los Angeles, Cal., for Jordache.

George Gottlieb, James Reisman, Gottlieb, Rackman & Reisman, Steven Gerber, Gen. Counsel and Secretary, Gitano Group, Inc., New York City, for Gitano.

Arthur Wineburg, Pennie & Edmonds, Washington, D.C., for Jordache Enterprises and Gitano Group, Inc.

Richard I. Samuel, Bathgate, Wegener, Dugan, Wouters, Neuman & Wolf, P.C., Newark, N.J., Philip J. Karlin, Los Angeles, Cal., for Rio Sportswear.

Joseph S. Kaplan, Michelle F. Forte, Ross & Hardies, Lawrence F. Scinto, Edward F. Vassallo, Fitzpatrick, Cella, Harper & Scinto, New York City, Diane L. Becker, Becker, Schoenfield & Wennergren, Oxnard, Cal., Albert Robin, Robin, Blecker, Daley & Driscoll, New York City, Richard A. Wallen, Harris, Kern, Wallen & Tinsley, Los Angeles, Cal., for Bon Jour.

Daniel A. DeVito, Weil, Gotshal & Manages, New York City, for Lee Apparel and Blue Bell.

DOLINGER, United States Magistrate Judge:

Defendants have moved to compel the production by plaintiffs of two categories of documents. First, defendants seek documents now in plaintiffs' possession that reflect communications between various foreign patent agents and an Italian corporation known as Istituto Guido Donegani S.p.A. ("IGD"), which is the licensee and sub-licensor of the patent at issue in this case. Plaintiffs resist disclosure based on their assertion of the attorney-client privilege. Second, defendants urge that plaintiffs be required to obtain, through IGD, any files now held by IGD's foreign patent agents concerning the prosecution of for-

eign patents corresponding to the patent at issue here.

## A. *A Brief Recapitulation of the Background of the Case*

Plaintiff Golden Trade S.r.L. is an Italian corporation and the owner of U.S. Patent No. 4,740,213, which covers a process for producing a random faded effect on cloth and garments. By agreement in November 1987, Golden Trade granted IGD exclusive licensing rights under the United States patent and corresponding foreign patents. As licensee, IGD has arranged for the filing of patent applications in a variety of foreign countries. It has done so through patent agents licensed to practice in these countries, and in the course of those efforts, it has corresponded with those patent agents.

IGD has also given plaintiff Greater Texas Finishing Corporation an exclusive sub-license for the United States. Among its provisions, that sub-license agreement requires that if Greater Texas files a lawsuit against infringers of the patent, IGD is to undertake "its best efforts ... to give [Greater Texas] ... all reasonably requested assistance and information necessary to proceed with such suit for infringement." (Exclusive License Agreement between IGD and Greater Texas Finishing Corporation at ¶ 8.3.)

This lawsuit, filed by both Golden Trade and Greater Texas, charges defendants with infringing the United States patent. In the course of exhaustive discovery, defendants sought production, *inter alia*, of communications between IGD and the patent agents whom it had retained to prosecute patent applications in numerous foreign countries, as well as the files retained by those foreign agents. Plaintiffs resist producing communications with patent agents in three of those countries. As for the requested files in the possession of the foreign patent agents, plaintiffs object principally on the basis of their assertion that these files are not in their possession or control, and possibly not in the possession or control of IGD.

## ANALYSIS

### A. Communications Between IGD and Foreign Patent Agents

Plaintiffs now withhold a small quantity of documents that involve correspondence between IGD and patent agents in Norway, Germany, and Israel. Before addressing each of these groups of documents, I briefly summarize the current state of the law.[1]

■ Under Rule 501 of the Federal Rules of Evidence, we are required to look to federal law governing the invocation of an evidentiary privilege. *See, e.g., United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 505 (2d Cir.1991). The generally accepted formulation of the attorney-client privilege in this circuit originates with Wigmore:

> (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

8 J. Wigmore, *Evidence* § 2292 at 554 (McNaughton rev. 1961), *quoted in In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1036 (2d Cir.1984); *United States v. Bein*, 728 F.2d 107, 112 (2d Cir.), *cert. denied*, 469 U.S. 837, 105 S.Ct. 135, 83 L.Ed.2d 75 (1984). Although this formulation, on its face, applies only to communications by the client to the attorney, the courts appear to hold that the same protection should extend to legal advice rendered by the attorney, at least if it might reflect or reveal the client's confidential communications. *See, e.g., Schlefer v. United States*, 702 F.2d 233, 245 (D.C.Cir.1983); *United States v.*

---

1. Plaintiffs originally resisted disclosure of similar documents involving communications with an Italian patent agent, but have since produced those documents, thus mooting the dispute. Although defendants urge us to address the question of the discoverability of the Italian documents despite their production, this court does not issue advisory opinions and there is no reason to spend any time on this closed issue.

*Amerada Hess Corp.*, 619 F.2d 980, 986 (3d Cir.1980) (citing cases); *P & B Marina, Ltd. Partnership v. Logrande*, 136 F.R.D. 50, 53 (E.D.N.Y.1991). *See also Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 683, 66 L.Ed.2d 584 (1981) (dictum); *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d at 1036–37; 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 503(b)[03] at 503–39 & n. 5 (1990).

The central purpose of the privilege is " 'to encourage full and frank communication between attorneys and their clients.' " *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1989) (quoting *Upjohn Co. v. United States*, 449 U.S. at 389, 101 S.Ct. at 682); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991). Achievement of this goal "assures that a person seeking legal advice may do so safely," *id.* at 1292, and that the attorney can effectively represent his client since "advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. at 389, 101 S.Ct. at 682. *Accord, e.g., United States v. Bilzerian*, 926 F.2d at 1292.

■ Consistent with these purposes, the attorney-client privilege is not limited to communications directly between the client and the attorney. Rather, if the purpose of the communication is to facilitate the rendering of legal services by the attorney, the privilege may also cover communications between the client and his attorney's representative, between the client's representative and the attorney, and between the attorney and his representative. *See, e.g.,* Sup.Ct. 503(b), quoted in 2 Weinstein & Berger, *supra*, at 503–1;[2] *id.* at 503–6; *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir.1961). Nonetheless, we are reminded that the privilege

> protects only those disclosures that are necessary to obtain informed legal advice

and that would not be made without the privilege ... [and that] [t]he privilege cannot stand in the face of countervailing law or strong public policy and should be strictly confined within the narrowest possible limits underlying its purpose.

*United States v. Goldberger & Dubin, P.C.*, 935 F.2d at 504 (citations omitted).

Application of these principles in the patent context has not always been simple or consistent, particularly in connection with the utilization of non-attorney patent agents. The most commonly encountered situation appears to involve the use of patent agents to assist in preparing and processing applications for United States and foreign patents on behalf of American entities. In some cases, the patent applicant deals directly with the patent agent, although more frequently such dealings are handled by the applicant's attorneys.

■ Because the attorney-client privilege is premised on the existence of an attorney-client relationship, the status of communications with patent agents under federal law ordinarily requires an assessment of the patent agent's relationship with the attorney and the client. If the patent agent is acting to assist an attorney to provide legal services, the communications with him by the attorney or the client should come within the ambit of the privilege. As summarized by Judge Weinstein:

> Communications to an administrative practitioner or to a patent agent who is not a lawyer, though not in themselves privileged[,] should be protected if they were made in confidence at the direction of a lawyer who is employing the practitioner to assist him in the rendition of legal services. For instance, communications to patent agents will qualify, provided it can be shown that the responsibility for the work being done for the client rested with an attorney, and that the patent agent worked under his di-

---

**2.** The Federal Standards of Evidence embody pre-existing case law and are looked to as reliable guides notwithstanding the decision of Congress not to include them in the Federal Rules of Evidence. *See, e.g., Martin v. Valley Nat'l Bank of Arizona*, 140 F.R.D. 291, 302 n. 4 (S.D.N.Y.1991) (citing cases).

rection and performed tasks relevant to the client's obtaining legal advice.

2 Weinstein & Berger, *supra,* ¶ 503(a)(3)[01] at 503–26 to 27. This standard, although not unanimously endorsed, is supported by the better reasoned decisions on this issue, *see, e.g., Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.,* 707 F.Supp. 1429, 1445–47 (D.Del.1989); *Cuno, Inc. v. Pall Corp.,* 121 F.R.D. 198, 204 (E.D.N.Y.1988); *W.R. Grace & Co. v. Pullman, Inc.,* 446 F.Supp. 771, 776 (W.D.Okla.1976); *Hercules Inc. v. Exxon Corp.,* 434 F.Supp. 136, 146 (D.Del. 1977); *Congoleum Indus., Inc. v. GAF Corp.,* 49 F.R.D. 82, 84 (E.D.Pa.1969), *aff'd,* 478 F.2d 1398 (3d Cir.1973), and is consistent with the underlying rationale for the attorney-client privilege and with its application to communication with other specialists who assist the attorney. *See, e.g., United States v. Alvarez,* 519 F.2d 1036, 1045–46 (3d Cir.1975) (use of psychiatrist to assist attorney); *United States v. Cote,* 456 F.2d 142, 144 (8th Cir.1972) (use of accountant to assist attorney); *United States v. Kovel,* 296 F.2d at 922 (same). By the same token, if the patent agent is not acting for an attorney, the privilege cannot be invoked, at least if—as in most cases—domestic law applies. *See, e.g., Status Time Corp. v. Sharp Elec. Corp.,* 95 F.R.D. 27, 32–33 (S.D.N.Y.1982).[3]

The more difficult question—and one crucial to the current motion—is whether an American court may ever apply foreign privilege law to determine whether communications with a patent agent should be protected and, if so, in what circumstances. This issue is significant because many foreign countries treat their patent agents as the functional equivalent of an attorney and recognize what amounts to an attorney-client privilege for his communications with his clients. *See, e.g., Chubb Integrated Sys., Ltd. v. National Bank,* 103 F.R.D. 52, 65 (D.D.C.1984) (discussing British Civil Evidence Act); *In re Ampicillin Antitrust Litigation,* 81 F.R.D. at 392 (same). In addressing this issue, I note at the outset that this "choice of law" question is governed by federal common law under Fed. R.Evid. 501. *See, e.g., Chubb Integrated Sys. v. National Bank,* 103 F.R.D. at 65. In applying that law, however, the courts have failed to develop a consistent approach.

The issue arises, of course, only with respect to communications with foreign patent agents, but the circumstances of such communications can differ in significant ways. For example, the communication may be between an American client and a foreign patent agent concerning the prosecution of a United States patent or

---

**3.** As indicated, some courts have either explicitly or implicitly rejected this approach, although for differing reasons. For example, in *Venitron Medical Prods. Inc. v. Baxter Lab., Inc.,* 186 U.S.P.Q. 324, 325–26 (D.N.J.1975), the court deemed patent agents, both American and foreign, to be performing lawyer-like functions in connection with patent issues, and hence concluded that their communications should be treated as the equivalent of attorneys' communications. The court in *In re Ampicillin Antitrust Litigation,* 81 F.R.D. 377 (D.D.C.1978), similarly viewed American patent agents as the equivalent of licensed attorneys and upheld a privilege if the agent was registered with the Patent Office, *id.* at 393, although it viewed communications with foreign patent agents concerning foreign patent activities as appropriately governed by the relevant foreign law. *Id.* at 391. In contrast, several courts in this district have appeared to suggest that patent agents' communications cannot be protected even if they are assisting an attorney because the patent agents "are not agents of the attorney." *Status Time Corp. v. Sharp Elec. Corp.,* 95 F.R.D. at 32–33

(citing *Burlington Indus. v. Exxon Corp.,* 65 F.R.D. 26, 40 (D.Md.1974)). *See also Novamont North America, Inc. v. Warner–Lambert Co.,* 91 Civ. 6482, 1992 WL 114507, *1–2 (S.D.N.Y. May 6, 1992); *Kahn v. General Motors Corp.,* 88 Civ. 2982, 1992 WL 28119, *2 (S.D.N.Y. Feb. 11, 1992); *Duttle v. Bandler & Kass,* 127 F.R.D. 46, 52 (S.D.N.Y.1989); *Revlon, Inc. v. Carson Prods. Co.,* 37 Fed.R.Serv.2d (Callaghan) 325, 327 (S.D.N.Y.1983). I note my respectful disagreement with those decisions to the extent that they may be read to imply that a patent agent can never be the "representative" of an attorney for purposes of the attorney-client privilege. For the reasons noted by Judge Weinstein, as well as by the Second Circuit in *United States v. Kovel,* 296 F.2d at 920–23, there is no justification for treating independent contractors as beyond the protective scope of the attorney-client privilege if they are in fact serving to assist an attorney to provide legal services to a client. *See, e.g., Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.,* 707 F.Supp. at 1445–47; *Mendenhall v. Barber–Greene Co.,* 531 F.Supp. 951, 954 (N.D.Ill.1982).

alternatively concerning the prosecution of a foreign patent. Or the communication may be between a foreign client and foreign patent agent concerning the prosecution of a United States patent or it may concern the prosecution of a foreign patent. Moreover, the communication may be made on behalf of the client by an American or foreign attorney or may be directly between the client and the patent agent.

■ In assessing the potential availability of foreign privilege law governing communications with patent agents, most courts have engaged in a form of traditional choice-of-law "contacts" analysis, *see Wells Fargo Asia Ltd. v. Citibank, N.A.*, 936 F.2d 723, 726 (2d Cir.1991), *cert. denied,* ── U.S. ──, 112 S.Ct. 2990, 120 L.Ed.2d 868 (1992), and have thus looked to whether the client was domestic or foreign, and whether the foreign patent agent was working on foreign patent matters or assisting in efforts to obtain a United States patent. *See, e.g., Novamont North America, Inc. v. Warner–Lambert Co.*, 91 Civ. 6482, 1992 WL 114507, *2 (S.D.N.Y. May 6, 1992); *Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.*, 707 F.Supp. at 1444–45; *Chubb Integrated Sys. v. National Bank*, 103 F.R.D. at 65; *In re Ampicillin Antitrust Litigation*, 81 F.R.D. at 391. The working standard in these cases has been summarized in general terms as follows: "any communications touching base with the United States will be governed by the federal discovery rules while any communications related to matters solely involving [a foreign country] will be governed by the applicable foreign statute." *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1169–70 (D.S.C. 1975). As summarized in *Duplan*, communications by a foreign client with foreign patent agents "relating to assistance in prosecuting patent applications in the United States" are governed by American privilege law whereas communications "relating to assistance in prosecuting patent applications in their own foreign country" or "rendering legal advice ... on the patent law of their own country" are, as a matter of comity, governed by the privilege "law of the foreign country in which the patent

application is filed," even if the client is a party to an American lawsuit. *Id.* at 1170–71. This general approach has been followed by most courts, *see, e.g., Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F.Supp. at 1444–45; *Chubb Integrated Sys., Ltd. v. National Bank*, 103 F.R.D. at 65; *Mendenhall v. Barber–Greene Co.*, 531 F.Supp. at 953; *In re Ampicillin Antitrust Litigation*, 81 F.R.D. at 391; *Novamont North America, Inc. v. Warner–Lambert Co.*, 1992 WL 114507 at *2; *see also Baxter Travenol Lab., Inc. v. Abbott Lab.*, No. 84 C. 5103, 1987 WL 12919 *8 (N.D.Ill. June 19, 1987), although, again, not with unanimity. *See, e.g., Status–Time Corp. v. Sharp Elec. Corp.*, 95 F.R.D. at 32–33 (semble); *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. at 40; *Rayette–Faberge, Inc. v. John Oster Mfg. Co.*, 47 F.R.D. 524, 526–27 (E.D.Wis. 1969). *See also Duttle v. Bandler & Kass*, 127 F.R.D. at 51–52 (dictum). It bears emphasis, however, that even those courts that have declined to look to foreign law were not addressing communications between a foreign client and a foreign patent agent about foreign patent questions. *See, e.g. Novamont North America, Inc. v. Warner–Lambert Co.*, 1992 WL 114507 at *2; *Status Time Corp. v. Sharp Elec. Corp.*, 95 F.R.D. at 32 (distinguishing *Duplan Corp. v. Deering Milliken Inc.*, 370 F.Supp. 761, 768 (D.S.C.1972)).

■ For the limited purpose of deciding the current motion, we need not address the many variations in fact patterns faced by these courts. In this case, according to the affidavits and privilege logs submitted by plaintiffs, the documents in question reflect communications between IGD, an Italian corporation and not a party to this lawsuit, and patent agents in Norway, Germany, and Israel who were assisting IGD in the prosecution of patents in their respective countries, and the communications concerned the processing of its patent applications in these three countries. Given this set of circumstances, it is apparent that the countries in which the patent agents represented IGD have the dominant interest in determining whether the com-

munications in question should be treated as confidential and that this court should therefore, as a matter of comity, look to the law of those jurisdictions unless that law is clearly inconsistent with important policies embodied in federal law.

In reaching this conclusion, I reiterate that federal law controls the determination of privilege issues under Rule 501. There is no reason, however, to read this rule as referring solely to substantive federal common law as distinguished from such choice-of-law rules as may otherwise be applicable. Nor is there any reason to read the rule as inflexibly precluding a federal court from looking to the substantive law of jurisdictions that, by virtue of the circumstances in which the disputed communication was made, have the most direct and compelling interest in whether those communications are to be publicly disclosed.

This process of referring to the law of the place where the allegedly privileged relationship was entered into is of course well recognized in cases in which, under Rule 501, the federal court is to look to state law governing privilege issues. *See, e.g., Mitsui & Co. v. Puerto Rico Water Resources Auth.,* 79 F.R.D. 72, 78 (D.P.R. 1978) (courts look to substantive law of the states "in which the assertedly privileged relationship was entered and exclusively sited" since it had "the most significant interest in determining whether or not that relationship is privileged"). *Accord, e.g., Samuelson v. Susen,* 576 F.2d 546, 551 (3d Cir.1978); *In re Westinghouse Elec. Corp. Uranium Contracts Litigation,* 76 F.R.D. 47, 53–54 (W.D.Va.1977). Indeed, where appropriate, federal courts applying "state law" under Rule 501 have determined that the forum state's choice-of-law rule dictated the application of a foreign country's law because that country had the primary interest in the assertedly confidential relationship. *See, e.g., Petruska v. Johns–Manville,* 83 F.R.D. 32, 35 (E.D.Pa.1979) (applying law of Quebec governing medical records).

This approach is entirely consistent with the standards imposed by Rule 501 when federal law applies. The rule instructs that if the issue of law to which the disputed communication is relevant is an issue as to which federal law supplies the rule of decision, the privilege claim "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501. In adopting this broad language, "Congress manifested an affirmative intention not to freeze the law of privilege. Its purpose rather was to 'provide the courts with the flexibility to develop rules of privilege on a case-by-case basis.'" *Trammel v. United States,* 445 U.S. 40, 47, 100 S.Ct. 906, 910, 63 L.Ed.2d 186 (1980) (quoting 120 Cong. Rec. 40891 (1974) (statement of Rep. Hungate)). Although this flexibility is most commonly invoked to determine whether to recognize new forms of privilege, or to "disestablish" previously recognized ones, *see, e.g., id.* at 47–53, 100 S.Ct. at 910–14; *In re John Doe,* 964 F.2d 1325, 1327–29 (2d Cir.1992), it has also been utilized to look to the law of other jurisdictions as guides when those jurisdictions have a strong interest in the relationship at issue. *See, e.g., King v. Conde,* 121 F.R.D. 180, 187–88 (E.D.N.Y.1988); *Kelly v. City of San Jose,* 114 F.R.D. 653, 656 (N.D.Cal.1987).

Moreover, sensitivity to the interests of other jurisdictions is perhaps most compelling in the international arena. Indeed, the comments of the Second Circuit in addressing a related issue concerning compelled production of documents from abroad are instructive. In *United States v. First National City Bank,* 396 F.2d 897 (2d Cir. 1968), Citibank had resisted a grand jury subpoena for documents from one of its West Germany branches on the ground that the production of the subpoenaed documents might subject it to civil liability under German law. *See id.* at 898. Although the court ultimately upheld the subpoena, it noted

> [U]nder the principles of international law, "A state having jurisdiction to prescribe or enforce a rule of law is not precluded from exercising its jurisdiction *solely* because such exercise requires a person to engage in conduct subjecting him to liability under the law of another

state having jurisdiction with respect to that conduct." Restatement (2d), Foreign Relations Law of the United States § 39(1) (1965) (emphasis supplied). It is not asking too much however, to expect that each nation should make an effort to minimize the potential conflict flowing from their joint concern with the prescribed behavior. *Id.* at § 39(2). Compare Report of Oral Argument, 25 U.S.L.W. 3141 (Nov. 13, 1956), *Holophane Co. v. United States*, 352 U.S. 903, 77 S.Ct. 144, 1 L.Ed.2d 114 (1956). Where, as here, the burden of resolution ultimately falls upon the federal courts, the difficulties are manifold because the courts must take care not to impinge upon the prerogatives and responsibilities of the political branches of the government in the extremely sensitive and delicate area of foreign affairs. *See, e.g., Chicago & Southern AirLines v. Waterman S.S. Corp.*, 333 U.S. 103, 111, 68 S.Ct. 431 [436], 92 L.Ed. 568 (1948). Mechanical or overbroad rules of thumb are of little value; what is required is a careful balancing of the interests involved and a precise understanding of the facts and circumstances of the particular case.

*Id.*, at 901.

In this case, a balancing of the relevant interests leads me to conclude that the laws of Norway, Germany, and Israel should govern the confidentiality of communications between IGD and its Norwegian, German, and Israeli patent agents because these countries have the predominant interest in whether those communications should remain confidential, and enforcement of their laws in this case would not seriously impinge on any significant policy of this forum. As noted, the communications were between a non-party Italian corporation and foreign patent agents concerning the prosecution of foreign patents. These communications thus do not "touch base" with the United States.

As for American policy interests, the Federal Rules of Civil Procedure of course contemplate liberal discovery in American lawsuits, and the courts have generally recognized that claims of privilege are to be narrowly construed to minimize interference in the ability of the parties to have their claims and defense adjudicated on their merits. *See, e.g., Doe v. Special Investigations Agency, Inc.*, 779 F.Supp. 21, 23 (E.D.Pa.1991); *Harper v. Auto–Owners Ins. Co.*, 138 F.R.D. 655, 661–62 n. 2 (S.D.Ind.1991). *See also Bower v. Weisman*, 669 F.Supp. 602, 603 (S.D.N.Y.1987). Nonetheless, the attorney-client privilege has been long recognized as embodying the important policy of ensuring that clients may consult frankly with counsel to obtain effective representation. *See, e.g., United States v. Zolin*, 491 U.S. at 562, 109 S.Ct. at 2626 (quoting *Upjohn Co. v. United States*, 449 U.S. at 389, 101 S.Ct. at 682); *United States v. Bilzerian*, 926 F.2d at 1292. The importance of this principle is underscored by the fact that this privilege, unlike most others, is absolute in the sense that it cannot be overcome merely by a showing that the information would be extremely helpful to the party seeking disclosure. *See, e.g., Resolution Trust Corp. v. Diamond*, 773 F.Supp. 597, 600 n. 2 (S.D.N.Y.1991) (comparing attorney-client privilege to deliberative-process privilege and work-product rule); *Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.*, 130 F.R.D. 28, 32 (S.D.N.Y.1990) (comparing attorney-client privilege and work-product rule). *See also Martin v. Valley Nat'l Bank*, 140 F.R.D. at 303–04 (work-product rule and deliberative-process privilege not absolute).

It also bears emphasis that the evidentiary record in this case suggests that the foreign patent agents perform services akin to lawyers in their field of specialization. Thus, although most American courts have noted that United States patent agents are not attorneys and hence have held them not to come directly within the scope of the attorney-client privilege, the invocation of a comparable privilege for patent agents—whether domestic or foreign—would not be dramatically inconsistent with the rationale underlying the attorney-client privilege, and indeed I note that a number of United States courts have in fact offered such a protection not only

for foreign patent agents but for domestic agents as well. *See, e.g., Venitron Medical Prods., Inc. v. Baxter Lab., Inc.*, 186 U.S.P.Q. at 325–26; *In re Ampicillin Antitrust Litig.*, 81 F.R.D. at 393. Whether or not we agree with those holdings, they illustrate the point that recognizing foreign-law protection for foreign patent agent's communications with their foreign clients concerning the prosecution of foreign patents will not undermine any compelling policy interest reflected in domestic law governing privilege claims.

■ Having reached this conclusion, we must still address the evidentiary record to determine whether it sufficiently establishes the factual premise for plaintiffs' privilege claims. In this regard, I note "that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir.), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224–25 (2d Cir.1984). *Accord, e.g., United States v. Stern*, 511 F.2d 1364, 1367 (2d Cir.), *cert. denied*, 423 U.S. 829, 96 S.Ct. 47, 46 L.Ed.2d 46 (1975). More broadly, the proponent of the privilege must establish not merely the privileged relationship, but all essential elements of the privilege. *See, e.g., In re Horowitz*, 482 F.2d 72, 82 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); *United States v. Kovel*, 296 F.2d at 923; *Martin v. Valley Nat'l Bank*, 140 F.R.D. at 302. This burden must be met by an evidentiary showing based on competent evidence, *see, e.g., von Bulow v. von Bulow*, 811 F.2d at 144 and cannot be "discharged by mere conclusory or ipse dixit assertions." *von Bulow v. von Bulow*, 811 F.2d at 146 (quoting *In re Bonanno*, 344 F.2d 830, 833 (2d Cir.1965)); *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d at 224–25.

■ In support of their privilege claim for the Norwegian documents, plaintiffs offer the affidavit of Per A. Martinsen, a registered Norwegian barrister. He reports that he participated in the prosecution of IGD's Norwegian patent in cooperation with a patent agent employed by his law firm. He reports that his role "was to provide advice and instructions" to the agent "regarding the legal issues associated with prosecution." ("Affidavit" of Per A. Martinsen, signed July 21, 1992, at ¶ 5.)[4] Mr. Martinsen also advises that under section 205 of the Norwegian Civil Dispute Act, Norwegian courts cannot receive evidence reflecting communications between barristers, acting in their professional capacities, and their clients, and that under section 250 of that law the Norwegian courts have precluded discovery of such communications. (*See id.* at ¶ 4.)

As for the documents in question, Mr. Martinsen reports that communications to the firm from IGD were addressed to the firm itself and not to specific individuals. Communications from the firm were "meant to represent the advice of our firm, which include both patent agents and registered barristers." (*Id.* at ¶ 6.)

This showing adequately establishes that the communications were covered by the attorney-client privilege in American terms and that we need not even resort to Norwegian law. If the patent agent was acting under the "instructions" as well as the advice of the barrister, then the communication, even if received or authored by the agent—as appears to be the case here—would be protected since she was serving to assist the attorney in providing legal services. Furthermore, under Norwegian law as elucidated by Mr. Martinsen, it appears that the communications would probably be protected since they were authored or received by a firm that includes registered barristers, one of whom apparently shared responsibility for prosecution of the patent in question.

4. The "Affidavits" of Per A. Martinsen, Dr. Peter Weinhold, Paul Tauchner and Neil J. Wilkof, Esq. were "[s]igned under the pains and penalties of perjury," and thus do not strictly comply with 28 U.S.C. § 1746 (1988). This technical defect is insignificant and in any event has been corrected by plaintiffs.

Although defendants insist that this showing is inadequate and that they have not been given an opportunity to depose Mr. Martinsen, I see no reason at present not to rely on his affidavit testimony. In this regard I note that defendants were free to proffer their own version of Norwegian law if they disagreed with his interpretation or if they had a basis for arguing that Norwegian law, when analyzed in greater detail, would not justify invocation of a privilege on the facts presented. Since defendants have refrained from doing do, I decline to question what is, on its face, uncontradicted testimony as to both the state of Norwegian law and the facts relevant to the application of that law.[5]

█ As for the German documents, plaintiffs proffer two affidavits. In one, Dr. Peter Weinhold states that he is a German Patent Attorney and was responsible for prosecuting IGD's German patent. ("Affidavit" of Dr. Peter Weinhold, signed July 21, 1992, at ¶ 1.) According to Dr. Weinhold, the title of "Patent Attorney" in Germany is the equivalent of a patent agent, and is attained on the basis of a "technical degree," legal training as an apprentice to another patent agent, training at the Patent Office, and passage of an examination. (*Id.* at ¶ 2.)

In an accompanying affidavit, Paul Tauchner, also a German Patent Attorney, reports that patent attorneys may appear in court, but only with "an attorney at law." ("Affidavit" of Paul Tauchner, sworn to July 21, 1992, at ¶ 1.) Mr. Tauchner reports that German law promises confidentiality to communications between a Patent Attorney and his clients. (*Id.* at ¶ 2.) Accordingly, the German courts may not compel a Patent Attorney to disclose such communications and a party may not obtain copies of written communication by pretrial discovery. (*See id.* & annexed statutory translations).[6]

Again, this unrebutted showing suffices to establish that the documents in question would be protected under German law. Since I conclude that such protection would not offend any serious policy interests of this jurisdiction and that the communications concern solely a foreign non-party client's prosecution of a foreign patent, I conclude that the documents should be protected.

█ In support of their privilege claim with respect to the Israeli documents, plaintiffs proffer the affidavit of Neil J. Wilkof, an attorney licensed to practice in Israel and the United States. He reports that Israel statutory law protects the confidentiality of attorney-client communications, and that the Israeli courts have applied this privilege to protect communications between a client and a so-called "patent attorney" even though the patent attorney is licensed to practice only before the patent office. (*See* "Affidavit" of Neil J. Wilkof, Esq., signed July 21, 1992, at ¶¶ 2–3, 5.) According to Mr. Wilkof, this privilege protects against forced disclosure of written communications by or to patent attorneys in the course of discovery. (*Id.* at ¶ 4.)

Once again, I find this showing—which defendants have not sought to rebut—adequate to establish that Israeli law would protect the documents at issue here. Since I conclude that application of this body of law is appropriate here, those documents too are protected from discovery in this proceeding.

## B. The Files of IGD's Patent Agents

As noted, defendants also seek production of the files of IGD's patent agents

---

5. Under Fed.R.Civ.P. 44.1, although the parties may present evidence as to the substance of foreign law, the court may conduct its own research on foreign law, and its ruling on what foreign law requires is deemed a ruling of law. *See* 5 James Wm. Moore, *et al., Moore's Federal Practice,* ¶ 44.1.01[2] at 44.1–3 to –4 (2d ed. 1992). Thus, it is not necessarily the case that the plaintiffs here bear a burden of proof on this issue, but even if they do, they have met it,

particularly in the absence of any substantive response by defendants.

6. The annexed translations are of section 203 of the Penal Code, section 24 of the Guidelines for the Practicing of the Patent Attorney Profession, section 53 of the Criminal Proceedings Code, section 383 of the Civil Proceedings Code, section 102 of the Revenue Regulations, section 84 of the Fiscal Court Code, and section 97 of the Criminal Proceedings Code.

relating to the prosecution of the foreign patent counterparts of the patent at issue in this case. Plaintiffs object, claiming that these files, which are presumably in the possession of those patent agents, are not within plaintiffs' "possession, custody or control." (Fed.R.Civ.P. 34(a).)

 Under Rule 34(a), a party can be compelled to produce documents only if it has either possession of the documents or "control" of them, which is customarily interpreted as requiring that the party have "the legal right to obtain the documents requested on demand." *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984). *See generally* 4A James Wm. Moore *et al.*, *Moore's Federal Practice* ¶ 34.17 at 34–69 to 72 & nn. 5–9 (2d ed. 1992). Notwithstanding the seeming strictness of this formulation, in practice the courts have sometimes interpreted Rule 34 to require production if the party has the practical ability to obtain the documents from another, irrespective of his legal entitlement to the documents. *See, e.g., Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D.Conn. 1989); *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 19 U.S.P.Q.2d 1196, 1200–01 (D.Kan.1991). *See also M.L.C., Inc. v. North American Philips Corp.*, 109 F.R.D. 134, 136 (S.D.N.Y.1986); *Holland American Merchants Corp. v. Rogers*, 23 F.R.D. 267, 268–69 (S.D.N.Y.1959).

 In this case, defendants must establish, at a minimum, the ability of IGD to obtain the files of the patent agents, and plaintiffs' practical ability or legal right to obtain those files from IGD.[7] Defendants cite principally a provision of the sub-license agreement between IGD and plaintiff Greater Texas under which IGD agrees to use "its best efforts ... to give [Greater Texas] ... all reasonably requested assistance and information necessary to proceed with [a] suit for infringement" of the li-

censed patent. (Exclusive License Agreement between IGD and Greater Texas Finishing Corporation at ¶ 8.3.) Although this provision may not be as directly on point as, for example, the contractual provisions in *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 928–29 (1st Cir.1988),[8] or *In re Nifedipine Capsule Patent Litigation*, 13 U.S.P.Q.2d 1574, 1575 (S.D.N.Y.1989), it plainly gives Greater Texas the right to cooperation by IGD, and the prior history of this case adequately demonstrates that such cooperation has been forthcoming and encompasses production of documents and other assistance in conducting discovery. Moreover, I note that, as a practical matter, IGD has a financial interest in the outcome of this litigation, thus further ensuring its cooperation. *See, e.g., Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 131 (D.Del. 1986).

More problematic is the entitlement or ability of IGD to obtain files from the patent agents. Analogizing to the relationship of clients and attorney in the United States, defendants argue that it may be presumed that IGD can obtain such files. Although not plainly established on the current record—defendants offer no evidence as to the relevant legal standards in any other country—such a prospect appears reasonable. Indeed, I note that plaintiffs have demonstrated, in the form of affidavits on this motion, that IGD's patent agents are perfectly willing to cooperate in plaintiffs' litigation of their claim in this forum. Moreover, I note that plaintiffs offer no meaningful response to defendants' argument that IGD probably has the legal right to obtain the files of its patent agents.

In view of the record on this motion, plaintiffs may properly be directed to request IGD to obtain the relevant files from its patent agents for review by defendants in this case. *See, e.g., Hercules Inc. v. Exxon Corp.*, 434 F.Supp. at 158 (plaintiff

---

**7.** In the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion. *See generally* 4A Moore *et al.*, *supra*, ¶ 34.17 at 34–68 to 69 ("A party who denies under oath that the requested documents exist, or that they are

within his custody or control, may not be compelled to produce them").

**8.** The contract in *Anderson* provided that the purchaser of certain real property must make its records available to the defendant-seller for use in the underlying personal injury action.

required to respond "to the best of its ability"). *See also Meyers v. Hermans Sporting Goods, Inc.,* 87 Civ. 7837, Memorandum & Order at 5 (S.D.N.Y. April 3, 1989). If there are insurmountable legal or practical obstacles to IGD obtaining access to the files, those obstacles can be documented as evidence of plaintiffs' good-faith efforts, but no such showing has been made at present by plaintiffs, and accordingly they must now bear the burden of obtaining those files.[9]

## CONCLUSION

For the reasons stated, defendants' motion to compel is denied except that plaintiffs are directed promptly to request that IGD obtain for production to defendants the files of IGD's patent agents reflecting the prosecution of foreign counterparts to the United States patent at issue in this case.

SO ORDERED.

---

9. Plaintiffs suggest, in passing, that it is unfair to force IGD—a non-party to this litigation—to undertake the assertedly burdensome task of collecting these files. The problems with this argument are two-fold—first, plaintiffs have not shown that this effort will in fact be unduly burdensome, and, second, IGD is, as noted, a potential beneficiary of any judgment for plaintiffs, and hence may fairly be expected to bear certain burdens in carrying out discovery.