Robert G. WALSH, et al., Plaintiffs,

v.

NORTHROP GRUMMAN CORP., et al., Defendants.

No. CV–94–5105 (TCP).

United States District Court, E.D. New York.

Feb. 9, 1996.

---

Stephen P. Hoffman, New York City, for plaintiffs.

Edward T. Ferguson, Marshall R. King, New York City, for defendants.

### MEMORANDUM ORDER

POHORELSKY, United States Magistrate Judge:

The plaintiffs have moved to compel discovery from a non-party, Salomon Brothers, Inc. ("Salomon"). Salomon served as the financial advisor to Northrop Corporation ("Northrop") in connection with the now-consummated merger of Grumman Corp. and Northrop Corp. Specifically, the plaintiffs seek to compel an employee of Salomon, Christopher Varelas, to answer certain questions propounded at a deposition concerning (i) his knowledge of the Grumman Employee Investment Plan ("EIP") and (ii) discussions between Salomon and Northrop about the EIP. Salomon, as well as certain of the defendants, have objected to certain parts of the inquiry about those matters, asserting the attorney-client privilege and lack of relevance. For the reasons set forth below, the plaintiffs' motion is GRANTED and Mr. Varelas shall provide further deposition testimony consistent with this decision.

Salomon's assertion of the privilege with respect to the information at issue here appears to rest on the assumption that the communication by an attorney of legal advice to a client is automatically privileged. The transcript of those portions of Mr. Varelas's testimony submitted to the court discloses that he was instructed by counsel at various junctures to answer questions only if he could do so "without divulging the substance of legal advice that you received from [Salomon's attorneys]." Transcript of Deposition of Christopher Varelas at 59. The privilege

is not that broad in the Second Circuit. Although there is substantial divergence among the federal circuit courts of appeal about the application of the privilege to communications of legal advice by attorneys, as distinguished from communications of confidential information by clients, *see generally*, 24 C. Wright & K. Graham, *Federal Practice and Procedure* § 5491 at 450–54, this circuit remains committed to the narrowest application of the privilege such that it protects only legal advice that discloses confidential information given to the lawyer by the client. *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir.1992); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y.1995). Thus, the instruction to Mr. Varelas was too broad and prevented him from answering questions which on the present record appear to seek unprivileged information.[1] At the resumed session of Mr. Varelas's deposition, Salomon may continue to maintain its objection to testimony that might disclose legal advice only if the revelation of the advice would reveal confidential information provided to Salomon's attorneys by Salomon.

As to the questions directed to Mr. Varelas regarding discussions between Salomon and Northrop, Salomon asserts the attorney-client privilege with respect to any information disclosed in those discussions which Salomon obtained from its attorneys. Salomon asserts the "common interest" doctrine to defeat the contention that disclosure of the information to Northrop waived the privilege.

The common interest doctrine has its roots in criminal litigation, *see Bank Brussels Lambert*, 160 F.R.D. at 447, where it was known as the "joint defense privilege." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989). The doctrine "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and under-

taken by the parties and their respective counsel." *Id.* (citing *United States v. Bay State Ambulance and Hosp. Rental Serv.*, 874 F.2d 20, 28 (1st Cir.1989)). The doctrine is limited to situations where multiple parties are represented by separate counsel but share a common interest about a legal matter. *Schwimmer*, 892 F.2d at 243–44; *Bank Brussels Lambert*, 160 F.R.D. at 447. The doctrine does not extend to communications about a joint business strategy that happens to include a concern about litigation. *Bank Brussels Lambert*, 160 F.R.D. at 447. The parties claiming protection under the doctrine must show that they had a common legal, as opposed to commercial, interest, and that they cooperated in formulating a common legal strategy. *Id.*

Judged under the above principles, Salomon's claim to the privilege fails on a number of scores. First, the common interest doctrine protects confidences shared by one party with the attorneys of another party. Thus, if it applied at all here, it would apply to confidences shared by Salomon with Northrop's attorneys, or confidences shared by Northrop with Salomon's attorneys. Neither situation is at issue here. Salomon wants to protect confidences it shared with its own attorneys and then shared, not with Northrop's attorneys, but with Northrop. To extend the common interest doctrine that far would mean that a party could shield from disclosure any discussions it had with another person about a matter of common interest simply by discussing that matter first with its attorneys. Such an extension of the privilege would run counter to the axiom, repeated often in this circuit, that the attorney-client privilege should be strictly confined within the narrowest possible limits underlying its purpose. *E.g., United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504 (2d Cir.1991); *In re Grand Jury Subpoena Duces Tecum Served Upon Gerald L. Shargel*, 742 F.2d 61, 62 (2d Cir.1984); *In re Grand Jury Subpoena Duces Tecum Served Upon Simon Horowitz*, 482 F.2d 72, 81–82

---

1. For example, following an instruction from counsel, Mr. Varelas refused to answer questions concerning his understanding of certain specific requirements of state law governing tender offers, presumably because he learned those re-

quirements from an attorney. Answering such questions Does not appear to risk the revelation of confidential information provided by Salomon to its attorneys.

(2d Cir.1984). Salomon has cited no authority where the common interest doctrine was extended to protect communications among parties situated like the ones here, and this court declines the opportunity to do so now.

The common interest doctrine does not apply here for other reasons. The common enterprise upon which Salomon and Northrop were embarked was a business, not a legal, enterprise. Salomon was advising Northrop on financial and other business strategies. That is plain from the written agreement between them that was submitted to the court on this motion. There was undoubtedly a concern about litigation. Northrop, in cooperation with Salomon as its investment banking advisor, was developing a business strategy one of whose components was to avoid litigation if possible. But that does not transform their common interest and enterprise into a legal, as opposed to commercial, matter. For all of these reasons, the communications between Northrop and Salomon do not meet the prerequisites for protection under the common interest doctrine. *See, e.g., Schwimmer,* 892 F.2d at 243–44; *Bank Brussels Lambert,* 160 F.R.D. at 447.

■ Salomon also argues that there was a principal-agent relationship between Northrop and Salomon and that therefore legal advice rendered to the agent, Salomon, for the benefit of the principal, Northrop, should remain privileged when it is shared with Northrop, particularly since all involved understood that the communications would be kept confidential. Putting aside the question whether the relationship between Northrop and Salomon was a principal-agent relationship, a proposition for which there is no support in the record before the court,[2] the argument suffers from at least two flaws.

First, it presupposes that communications of legal advice, as opposed to client confidences, are privileged, a premise which, as addressed in the discussion above, is unsound.

The argument is also flawed because there is no legal authority for the proposition that communications between a principal and its agent of the sort at issue here are privileged.[3] The cases cited by Salomon in support of its argument are inapposite. *Jack Eckerd Corp. v. Dart Group Corp.,* 621 F.Supp. 725 (D.Del.1985), does not address the attorney-client privilege. Although the court there applied agency principles in determining that a law firm had an implied attorney-client relationship with the company for whom the law firm's client rendered investment banking services, that holding was rendered, in the context of a disqualification motion, to bar the firm from appearing as adversary counsel in takeover litigation commenced against the company only months later. *Id.* at 730–33. The court never addressed the application of the privilege to communications between the law firm's former client and the company its client was advising.

Although factually somewhat more similar, *CSC Recovery Corp. v. Daido Steel Co.,* 1995 WL 338294 (S.D.N.Y.1995), and the case upon which it relied, *Golden Trade v. Lee Apparel Co.,* 143 F.R.D. 514 (S.D.N.Y.1992), are also distinguishable. In *CSC Recovery,* the court held the privilege applied to documents that reflected legal advice requested of, or rendered by, a company's outside counsel *through* the company's financial consultant and agent in the transaction at issue. Although the court did not detail its reasoning, it cited *Golden Trade,* 143 F.R.D. at 518, for the proposition that the privilege may

2. The engagement letter between Salomon and Northrop provides for the provision of certain services by Salomon to Northrop but does not ever designate Salomon, expressly or impliedly, as Northrop's agent to undertake any obligations in the name of Northrop.

3. The Court of Appeals for the Second Circuit has outlined the elements of the attorney-client privilege in this way:
   (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his

capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.
*In Re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1036 (2d Cir.1984). The communications from Salomon to Northrop fail to satisfy virtually every element of that definition except the last one.

also cover communications between a client and his or her lawyer that are transmitted through a middleman acting as a representative of either the lawyer or the client, if the purpose of the communication is to facilitate the rendering of legal services by the lawyer. *CSC Recovery*, 1995 WL 338294 at 1. Here, the communications were not between a client and its lawyer through a middleman. Nor were they made for the purpose of obtaining legal services from the lawyer. Thus, neither *CSC Recovery* nor *Golden Trade* support extension of the privilege to the meetings and discussions between Salomon and Northrop that are at issue here.

■ Several of the defendants have also opposed the plaintiffs' motion on the ground that the information the plaintiffs seek to compel from Salomon is irrelevant to the claims in this case. Their principal argument is that the plaintiffs have not established a nexus between any legal advice rendered by Salomon's attorneys which Northrop may have received through Salomon and any of the claims in this case. The nexus is absent, they contend, because there is no evidence of any pre-merger discussions between Northrop and the trustees about the factors the trustees should consider in determining whether the EIP should accept Northrop's tender offer. Although the argument is not without merit, and the absence of such a nexus might well preclude any such information from being presented to a jury at a trial of this matter, the broader scope of subjects deemed appropriate for discovery under the federal rules provides sufficient reason for the plaintiffs to have limited additional time to inquire regarding those matters. There is no question that Northrop and Salomon were principal participants in the transaction at issue here, and, given the complexity of the issues, the court cannot find that the information sought is not reasonably calculated to lead to the discovery of admissible evidence. A limitation of the time for completion of Mr. Varelas's deposition will serve to limit any unnecessary and irrelevant questioning.

For the foregoing reasons, the plaintiffs' motion to compel is granted and Mr. Varelas will appear for further deposition testimony concerning only those matters about which the plaintiffs were prohibited from pursuing by assertion of the attorney-client privilege. The questioning shall be limited to two hours by plaintiffs and such additional time as the defendants may wish to cross-examine. The deposition is to be completed by February 29, 1996.