JERRY E. SMITH, Circuit Judge,
dissenting:
I.
This is a case of compelled document production without adequate warning. In refusing to issue a writ of mandamus, the panel majority overlooks important details from the course of proceedings, misapplies applicable law and the local rules, and fails to take account of the reassignment of this case to a different district judge.
Perhaps even more importantly, the plaintiffs — who are the movants seeking to acquire the documents at issue — have now moved to dismiss the district court proceeding, because the parties have reached a full settlement of this litigation. There is, effectively, no longer a case or controversy in this matter, and the mandamus proceeding is, at least practically speaking, moot and should be dismissed as such or held without a ruling. Because of the lack of a case or controversy, the majority’s opinion is without precedential force in this circuit or elsewhere — an exercise in oratory without legal significance.
By insisting on acting on the mandamus petition immediately before final judicial approval of the settlement, the panel majority — albeit presumably with the best of *717 intentions — issues a ruling that is beyond its judicial power. The majority offers no explanation of why it persists in acting at this time and under these circumstances. Accordingly, I respectfully dissent.
II.
The essence of what occurred to spark the mandamus petition appears succinctly in that petition:
On March 9, 2001 the trial court held a hearing requested by one defendant for the purpose of scheduling expert witness depositions and class representative depositions .... Counsel for three of the twenty-two defendants were present. ...
At the end of that hearing, Plaintiffs’ counsel, without a motion to compel on file and/or a hearing scheduled on production of documents, demanded production of a category of documents claimed privileged by defendants.... After [a] description by Global Marine’s counsel of one example of a document at issue, the trial court ordered all defendants to produce all documents prepared by legal counsel that were “transmitted to another company”....
Even though the defendants had no notice that the trial court would rule on this issue on March 9, even though the trial court did not allow the submission of evidence and authorities in support of the privilege, even though the trial court did not review a single document in camera, in this lawsuit with 22 defendants, it ordered the production of all privileged documents authored by legal counsel and transmitted to another company. The court ruled that all defendants had waived their attorney-client privilege.
(Paragraph breaks added.)
III.
I will elaborate on the majority’s account of what occurred in this proceeding. At the March 9, 2001, hearing, before The Honorable Samuel Kent (“the district court”), who issued the ruling at issue in this mandamus proceeding, the only counsel present were as follows, as set forth in the official transcript:
For the Plaintiffs: Melancon & Hogue[,] By: Mr. Richard Melancon[,] By Mr. Anthony Buzbee [address]
For the Defendant Global Marine: Citti & Associates[,] by Mr. Ross Citti [address]
For the Defendant Nabors Drilling, USA: Fulbright & Jaworski[,] By: Mr. Steve Roberts [address]
For the Defendant Marine Drilling: Royston, Rayzor, Vickery & Williams[,] By: Mr. James Watkins [address]
As is plainly evident, no counsel was present for petitioner Santa Fe International Corporation (“Santa Fe”). Nor was there ever an indication that any of the attorneys present was authorized to, or did, speak or try to speak on behalf of Santa Fe or any of the other eighteen absent defendants.
At the beginning of the hearing, Mr. Citti announced the following: “Ross Citti for Global Marine, Your Honor.” This contrasts vividly with the announcement made at the January 3, 2001, hearing in this case, at which attorneys Finis Cowan and David Beck announced, at the beginning, that they had “been designated as the spokespersons for this hearing”; the court reporter listed them as appearing “for defendants.”
At the March 9 hearing, there was no announcement that Mr. Citti was at the March 9 hearing to represent or speak for any defendant other than his client, Global Marine. In its petition, Santa Fe explains why, in fact, Mr. Citti could not adequately have done so: “Counsel for only three out of twenty-two co-defendants were present at the hearing.... The counsel [i.e., Mr. Citti] who requested the hearing for pur *718 poses of scheduling depositions was not— and could not have been — prepared to discuss each of the defendants’ arguments relating to each of the documents alleged to be covered by the common interest [CLI] privilege, especially in light of the fact that each defendant was at a different stage of preparing its privilege logs.”
It is not surprising that Santa Fe was not represented. The only formal notice of the hearing was a one-sentence letter from Mr. Citti to Melancon, Hogue & Buz-bee, L.L.P., dated March 8, 2001 — the day before the hearing — advising of “a hearing to resolve outstanding discovery issues.” The letter does not indicate that copies were sent to anyone, although other counsels’ presence at the hearing suggests that at least some other attorneys were notified.
Even if Santa Fe’s counsel, Lawrence Gaydos of the firm of Haynes & Boone, was told of the hearing, the document production should not have been ordered there. As Santa Fe explains,
Plaintiffs’ argument that Santa Fe could not have been surprised by their pursuit of production of the documents in this case is no answer to Santa Fe’s due process right to have notice that the issue would be raised at a hearing scheduled for an entirely different purpose and the right to be present and to present argument at the hearing.
IV.
It is unfortunate enough that the district court ordered document production without notice or a hearing or other due process protections. Even more astonishing — and without explanation or support in the record or in any caselaw from this circuit or elsewhere — is that the court actually gave movants more than they were asking for in regard to production of these documents.
Movants’ counsel came to the hearing asking only for in camera review. What they got, instead, was immediate production of the very documents — indeed, all the documents — they had requested.[1] The majority’s declaration that the attorneys were seeking immediate production — as distinguished from in camera review — is undermined by what the attorneys said, as reflected in the record.
At the hearing, Mr. Buzbee recounted his conversation of the previous day with Mr. Citti, agreeing to the hearing. As Mr. Buzbee explained, plaintiffs were asking only that defendants bring the documents so the court could examine them. As Mr. Buzbee put it, “let the Judge look at them.” Importantly, Mr. Buzbee described the documents as papers that “hurt them [the defendants] badly.”
The court apparently never even considered looking at the documents. Instead, it summarily ordered them produced. That is, as I have said, more than the attorneys were even asking for at that time.
Moreover, Mr. Citti, at the hearing, described only one document, using it as an example of a set of documents as to which the common legal interest (“CLI”) privilege was being claimed. Without even attempting to consider the various documents separately, to see whether perhaps some but not all were privileged, the court just ordered that “I want all of those documents produced.” The court added: “I want those documents.”
*719 Even assuming — contrary to fact — that Mr. Citti was authorized to speak for Santa Fe, the court seriously erred not only in failing to look at the documents but also in refusing to allow some sort of hearing, especially in light of the lack of warning of the nature of the proceeding. After the court declared that “I want those documents,” Mr. Citti at least attempted some sort of defense, if only on behalf of his client, Global Marine Drilling Company: “Your Honor, there is some authority for the proposition that the privilege that we’re asserting exists and what I — would the Court consider a very short brief — ,” to which the court answered: “No. I’m ordering you to do what you want. Seek mandamus if you don’t like that but do it within the time frame I’ve suggested or I’ll have the special master do it for you.”
V.
If the documents indeed might have turned out to be privileged, ordering their production might have violated the “joint defense” or “CLI” privilege, an expansion of the attorney-client privilege, recognized by this court, that prevents a waiver of attorney-client privilege where an attorney discloses privileged information to actual or potential co-defendants. In re LTV Sec. Litig., 89 F.R.D. 595, 604 (N.D.Tex.1981) (Higginbotham, J.). See Wilson P. Abraham Constr. Corp. v. Armco Steel Corp., 559 F.2d 250, 253 (5th Cir.1977). The purpose of the CLI privilege is “to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.” United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir.1989).
Santa Fe correctly argues that the CLI privilege provides protection during the course of a joint legal defense effort and is not waived by communication between attorney and client “to the extent that [the communication] concernís] common issues and [is] intended to facilitate representation in possible subsequent proceedings.” LTV, 89 F.R.D. at 604 (citing Hunydee v. United States, 355 F.2d 183, 185 (9th Cir.1965)). In other words, the parties claiming protection under the rule only need share “a common legal interest” about a matter, see Hodges, Grant & Kaufmann v. United States, 768 F.2d 719, 721 (5th Cir.1985),[2] and there need be no actual litigation in progress, see Schwimmer, 892 F.2d at 243-44. As long as Santa Fe shows that the documents were given in confidence and that the communication regarded a common legal interest with respect to the subject matter of the communication— both assertions that Santa Fe says it can satisfy — the district court should not order production.
Responding to Santa Fe’s characterization of the documents, the district court stated, “I think once the documents albeit the confidential one from general counsel within the company is transmitted to another company, you voluntarily waive any privilege. Then it becomes the precise genesis of antitrust.” This is plainly not the law in the Fifth Circuit. Nevertheless, the district court, in responding to the mandamus petition, justifies its decision by citing caselaw from other circuits that imposes a restrictive reading of the CLI doctrine.[3]
*720 As I have said, in this circuit, “[t]he privilege is not ... waived if a privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication.” Hodges, 768 F.2d at 721 (citing Wilson P. Abraham Constr. Corp., 559 F.2d at 253).[4] There is no accurate way to decide whether the “common legal interest” test is satisfied without examining the documents individually.
VI.
Even if the cases the district court now relies on were binding caselaw in this circuit, the decision should not stand, because the court lacks evidence on which to base its conclusions. As Santa Fe describes it, the district court, instead of looking at the documents and determining their nature, “summarily ruled that privilege is always waived when documents are transmitted to a third party, thus eradicating any common interest privilege in the face of this circuit’s law to the contrary [and][t]hen ... refused to reconsider its ruling.” The court overlooked Hodges, a case from this circuit that recognizes the expansion of attorney-client privilege to encompass the CLI doctrine and that, based on LTV and Schwimmer, prevents such documents from being handed over if it is determined that they indeed are privileged.
Neither we nor the district court knows whether the documents are privileged. Neither the district court nor this court has viewed the documents. It may be that some are privileged and some are not. All that is recorded in the transcript of March 9 is Santa Fe’s statement that they are privileged and the district court’s decree that they are not.
More analysis is needed before any such documents should be ordered produced. Instead, however, the district court ordered all the documents, from all the defendants, to be turned over at once.
VII.
As Santa Fe alleges, the district court failed to abide by the applicable rules of procedure. The movants never filed a motion for production of the documents in accordance with Southern District of Texas Local Rules 7.1 and 7.3,[5] which require of opposed motions that they be in writing and must include or be accompanied by authority, must be accompanied by a separate proposed order granting the relief requested and setting forth information sufficient to communicate the nature of the relief granted, must contain an averment that the movant has conferred with the respondent and that they cannot agree on the disposition of the motion, and must be filed twenty days before submission. Be *721 cause plaintiffs filed no motion and made instead only an “impromptu oral request” for production, the ruling that the documents are not privileged is error.
The purpose of the March 9 hearing was to discuss two issues: the scheduling of the depositions of the plaintiffs’ experts and the production of the class representatives for deposition. Moreover, Santa Fe’s assertion that the movants “ambushed” them with their request for the documents provides additional ground for enforcement of the local rules, which are designed to ensure that notice is given to the party from whom production is sought.
In their response to the petition, the movants contend that there was no way Santa Fe could have been surprised by their request, because “[t]he dispute amongst the parties concerning privilege issues had been extant for more than a month prior to the [district] [cjourt’s hearing [of March 9].” This assertion is not dispositive, however.
Even if we assume, arguendo, that Santa Fe persuasively could have defended the documents’ CLI privileged status on March 9, and thus had complete notice of movants’ intention to request production at the March 9 hearing, the district court still denied Santa Fe the opportunity to defend itself on that same day by summarily ruling that the documents are not protected. Therefore, the notice issue that the mov-ants raise is irrelevant, and the important fact is that Santa Fe never was given the opportunity to establish the alleged privilege.
VIII.
Forcing any party to turn over privileged documents is a serious matter. An order directing the production of such documents easily justifies the extraordinary remedy of mandamus. In re Burlington N., Inc., 822 F.2d 518, 522 (5th Cir.1987). Here, we cannot know whether the documents ultimately should be produced, because the district court has not accorded Santa Fe its right to an orderly process to determine the nature of the documents or the history of their dissemination.
The error that justifies mandamus relief is this procedural failure to allow, after sufficient notice, an adequate hearing and in camera review, so the parties from whom these allegedly damaging documents are being demanded can have their fair day in court. The majority should require adherence to these basic requirements.
IX.
An additional justification for mandamus relief materialized well after Santa Fe filed its mandamus petition. On July 30, 2001, the Chief Judge of the United States District Court for the Southern District of Texas entered an order that, with the consent of the district court, reassigned this case, and eighty-four others in which Mr. Melancon was representing plaintiffs before the district judge against whom this mandamus proceeding is brought, to the docket of another judge of the Southern District of Texas.[6]
Mandamus proceedings are brought against a specified district judge, in response to an action or ruling by that judge, and not against a district court in the abstract. Here, as I have explained but the majority does not discuss, the mandamus petition is brought against a judge who no longer presides over this case. If it were not for the imminent settlement of this litigation, this matter most properly would need to be returned for review by the newly-assigned district judge, so he would have the opportunity to examine the documents at issue and exercise his own *722 discretion in regard to them. He should not be saddled with the decisions of his predecessor, when it would be so simple and expeditious to send this issue to him now.
Accordingly, because the panel majority, for the reasons I have stated, should not be acting at this time to deny the petition for writ of mandamus, I respectfully dissent from the decision of the majority to insist on issuing its order now, and from the substance of that order even assuming it were properly issued.

. I am at a loss to understand the majority's assertion that the district court ordered the production of only one document. At the hearing, the attorneys and the court repeatedly referred to multiple documents. As I will note, the court ordered that "I want all of those documents produced" and added, "I want those documents." Even more specifically, Santa Fe, in its mandamus petition, asks us to direct the court to vacate its "ruling ... to produce documents claimed to be protected.”

. Accord United States v. Fortna, 796 F.2d 724, 730 (5th Cir.1986).

. See Walsh v. Northrop Grumman Corp., 165 F.R.D. 16, 18 (E.D.N.Y.1996) (stating that CLI privilege applies only to parties having a common "legal” interest, rather than a mere business interest); Schwimmer, 892 F.2d at 243 (opining that the CLI privilege is limited to those communications oriented primarily to *720 ward preparing a legal defense); Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 447 (S.D.N.Y.1995) (contending that the CLI privilege does not encompass a joint business strategy that happens to include as one of its elements a concern about litigation); Griffith v. Davis, 161 F.R.D. 687, 692 (C.D.Cal.1995) (asserting that a joint defense effort must have been embarked upon irrespective of whether litigation has been commenced); Medcom Holding Co. v. Baxter Travenol Labs., Inc., 689 F.Supp. 841, 844 (N.D.Ill.1988) (stating that the timing of the communications is important — there must be a strong possibility of litigation).

. The movants assert that the district court did not rule that the CLI privilege does not exist. Instead, they argue that the court ruled that the CLI privilege does not apply to three specific documents in Santa Fe's possession, specific documents that, contrary to what movants say, are neither discussed nor alluded to by the parties or the district court anywhere in the record, save in movants' response to the petition.

. These local rules impose requirements in addition to those of Fed.R.Civ.P. 7(b).

. Special Order No. G-01-01 (S.D.Tex. July 30, 2001).