Sachiko T. BOWER, Plaintiff,

v.

Frederick R. WEISMAN, Frederick Weisman Co., and Rare Properties, Inc., Defendants.

No. 85 Civ. 8916 (RWS).

United States District Court, S.D. New York.

Sept. 10, 1987.

Montclare & Guay, New York City (Paul Montclare, of counsel), for plaintiff.

Summit Rovins & Feldesman, New York City (John L. Amabile and Kathryn J. Fritz, of counsel), for defendants.

Crowley Lebow & Cuneo, Los Angeles, Cal. (Arthur J. Crowley, of counsel), for defendants pro hac vice.

## OPINION

SWEET, District Judge.

Plaintiff Sachiko Bower ("Bower") has moved to compel answers to certain questions and the production of certain documents which have been withheld by defendant Frederick Weisman ("Weisman") on the grounds of attorney client privilege. For the reasons set forth below, the motion is granted in part and denied in part.

**Information Withheld**

The information withheld by Weisman falls into five distinct categories:

1) Production of testamentary trust instruments and a videotaped codicil of Weisman's will.

2) Communications with Weisman's attorneys Richard Gilbert and Robert Litten-berg (now deceased) relating to the subject matter of proposed property agreements between Bower and Weisman drafted by those attorneys in the years 1982 through 1984.

3) Communications with Weisman's attorney Coleman Bean about the proposed property agreements drafted by Gilbert and Littenberg.

4) Communications in 1985 in which Weisman may have directed his business and financial advisor Mitchell Reinschreiber to tell Gilbert's firm that Weisman was under emotional and mental duress from Bower.

5) Communications in 1980 in which Weisman may have told Littenberg to find a way to make $1 million available to Bower without gift tax liability.

**Applicable Law**

Under Fed.R.Evid. 501, in a civil action where state law determines the rule of decision, the privilege of a witness is determined by state rather than federal law. *See Drimmer v. Appleton*, 628 F.Supp. 1249, 1250 (S.D.N.Y.1986). The courts of New York, the forum in this action, would apply the privilege law of the place where the evidence will be introduced at trial or the location of the discovery proceeding itself. *Id.* at 1250. The discovery in this case is being taken with respect to both the New York and the related California action. Bower and Weisman have both briefed both New York and California law on the issues, and Weisman has represented that the law in the two fora is identical on these questions, which Bower has not disputed.

Under New York law, "communications encompassed by [the attorney-client privilege] are absolutely privileged unless the privilege is waived by the client." *Reisch v. J & L Holding Corp.*, 111 Misc.2d 72, 443 N.Y.S.2d at 638, 640 (Sup.Ct.1981). The privilege, however, "should be narrowly construed in accordance with the Court of Appeals' direction to allow liberal discovery to sharpen issues and avoid undue delay." *Id.*

604

■ Waiver of the privilege can be either express or by conduct, including partial disclosure. *See* 8 Wigmore, *Evidence* § 2327 (McNaughton rev. 1961). That is, "A client's disclosure to a third party of a communication made during a confidential consultation with his attorney 'eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended or as a waiver of the privilege.'" *United States v. Aronoff,* 466 F.Supp. 855, 862 (S.D.N.Y. 1979) (quoting *In re Horowitz,* 482 F.2d 72, 81 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973)). In addition:

[A] disclosure of, or even merely an assertion about, the communication may effect a waiver of privilege not only as to that communication, *but also as to other communications made during the same consultation and communications made at other times about the same subject. Id.* (emphasis added).

## A. The Trust Documents and the Codicil.

Bower has argued that she is entitled to the trust documents because the existence of a trust would tend to establish the pattern of conduct between Bower and Weisman during their relationship. She has demanded any will codicils on the grounds that they may be relevant in describing the nature of her relationship with Weisman.

Weisman has refused to produce them on the grounds that they are covered by the attorney client privilege. In general, such documents are subject to the privilege: "[T]here are few communications that are more confidential than those relating to the preparation, contents and execution of a will when made within the scope of the attorney-client relationship, not in the presence of a stranger and not made to the attorney with the intention that he communicate its contents to someone else." *Will of Johnson,* 127 Misc.2d 1048, 488 N.Y.S.2d 355, 357 (Sur.Ct.1985).

■ Here, however, Weisman has waived the attorney-client privilege with respect to his testamentary instruments by producing copies of attorney Gilbert's handwritten notes which reflect attorney-client communications about Weisman's will: "[O]n FW's death he will will to her [Bower] balance ... by forgiving note (so she can retire indebtedness[).]" There is a star in the margin at this point in the notes, next to which is written "Can we keep note out of FW's gross estate[?]"

With respect to the trust agreements, the handwritten Gilbert notes contain the following:

"Sachiko understands there is a irrevocable trust in place—[unintelligible] asked if that is so

* the amount to her benefit
* how pd

I told him there is irrev. trust provides for 750,000 cash payment on FW's *death.*" (emphasis in original)

By producing these privileged communications about the will and the trust agreement, Weisman has waived his privilege with respect to the entire subject matter, and the trust agreements and codicils will be produced.

## B. Oral Examination of Weisman on the subject matter of Attorney-Client Documents which have been Produced.

■ In addition to the Gilbert notes, Weisman has also already produced a series of documents that relate to understandings and draft property settlement agreements between Weisman and Bower being discussed and negotiated in August 1984. The papers include not only drafts, but letters from Weisman's counsel to Mitchell L. Reinschreiber, Weisman's business and financial consultant, outlining the purpose of the agreements and the reasons for various changes. One of the letters observes, for instance, that the documents represent "an attempt to take the first step toward protecting Fred's interest from any claim by Sachiko after his death."

The production of these documents and letters is sufficient waiver of the attorney-client privilege to find that Weisman has waived his privilege with respect to them. He may be orally examined about his com-

munications with Gilbert and Littenberg on the subject of the already produced documents.

■ Weisman, however, has apparently also communicated with Coleman Bean, an attorney at another law firm, on the subject of the documents that have been produced, and Bower seeks to examine Weisman on those communications as well, on the grounds that confidentiality has been waived as to the entire subject matter. For his part, Weisman submits that communications about the documents with a *different* lawyer are not affected by any waiver of the privilege with respect to Gilbert and Littenberg, and has cited authority from a district court decision in the District of Maine in support of the proposition. *Diotima Shipping Corp. v. Chase, Leavitt & Co.*, 102 F.R.D. 532, 537 (D.Me. 1984) (privilege waived only as to all communications between "same attorney and the same client on the same subject"). Bower having cited no authority to the contrary, nor having offered any reason why the rule should not be applied in this case, Bean will not be deposed on the subject.

## C. Oral Examination of Weisman about Direction to Reinschreiber to Contact Gilbert about Bower.

Bower seeks to compel Weisman to testify about instructions that he may have given to his attorneys through his financial and business advisor about Weisman's feelings that Bower was subjecting him to emotional duress. Bower sought to examine Weisman on a letter in her possession from Weisman's attorney to Weisman. Weisman declined to answer on the grounds of attorney client privilege, and the issue is whether Bower's possession of the letter is sufficient evidence either that the communication was not meant to be confidential or that Weisman has waived the confidentiality.

According to the evidence adduced by Weisman, Bower came into possession of the letter in the following manner. Weisman and Bower were travelling together and sharing a hotel suite. At the time, the two were still close enough that they were, according to Bower's testimony, "sleeping ... together." Weisman left for a business meeting, and directed Bower to wait for him in their suite. According to Bower, in the living room of the suite, "his [Wiesman's] paper was all over, spread on the table. And then I was trying to cleaning [sic] up in the room and organize, and I saw a paper lying there with my name on it from an attorney to him." Bower made a copy of the letter, upon which she sought to examine Weisman at his deposition.

The issue is whether, under these circumstances, the letter is properly a "confidential" communication. In a change from the common law rule, both the California and the New York code direct that the interception of a confidential communication by an eavesdropper, for instance, does not destroy the privilege. Calif.Evid.Code § 954 comment; N.Y. C.P.L.R. § 4503. According to Judge Weinstein, "This change accords with the realities of modern life. While it may perhaps have been tolerable in Wigmore's day to penalize a client for failing to achieve secrecy, such a position is outmoded in an era of sophisticated eavesdropping devices against which no easily available protection exists." J. Weinstein & M. Berger, 2 *Weinstein's Evidence* ¶ 503(b)[02] (footnotes omitted). However, the eavesdropper rule "does not ... in any way reduce the client's need to take all possible precautions to ensure confidentiality." *Id.* As the commentary to the California Code observes: "[T]he making of the communication under circumstances where others could easily overhear it is evidence that the client did not intend the communication to be confidential." Calif. Evid.Code § 954 comment. Weinstein illustrates this notion thus: "If ... the communication takes place in a crowded elevator the client should expect that there will be persons listening and he will be taken not to have intended the statements to be in confidence." 2 *Weinstein's Evidence* ¶ 503(a)(4)[01], at 503–31.

■ Under the facts here, by leaving a letter spread out on a table in a room in a suite in which Bower was directed to wait

fails to reach the level of taking "all possible precautions to ensure confidentiality." *Id.* at ¶ 503(b)[02]. While not quite as careless as communicating in an elevator, leaving a document out on a table (as opposed to putting it in a briefcase or in a drawer) in a public room in a suite in which another person is staying is insufficient to demonstrate Weisman's objective interest in its confidentiality. Consequently, Weisman may not assert attorney-client privilege with respect to the letter in question.

### D. Discovery of Documents from the File of Richard Gilbert, Esq.

■ Bower has also asserted, in essence, that the production of the Gilbert and Littenberg draft documents was so great a waiver, that Weisman has waived his right to claim any privilege as to any of his communications with them, and has demanded the production of all of the remaining documents which are a part of Gilbert's file. In addition, she seeks to examine Weisman on a communication with Littenberg in 1980 about a way to make a $1 million gift to her without gift tax liability. Although the disclosure of documents is substantial, and what has been disclosed is explicit that the documents are "an attempt to take the first step toward protecting Fred's interest from any claim by Sachiko after his death," there has not been a waiver as to *all* the communications. Weisman will, however, disclose documents from Gilbert's file that bear on the issue of protecting Weisman's interest from claims by Bower after his death.

IT IS SO ORDERED.