OPINION OF THE COURT
Lee L. Holzman, J.
The primary issue raised in this motion and cross motion is whether the respondent may be compelled to produce at her examination before trial her own wills and trusts or whether the attorney-client privilege or the confidential, ambulatory nature of the will of a living person protects these documents from disclosure. The court holds that these documents are not protected by the attorney-client privilege. However, the confidential nature of these documents dictates that disclosure should be compelled only upon a strong showing of necessity. Here, a limited disclosure is appropriate to enable the petitioner to properly prepare for trial.
The underlying proceeding was commenced by one of the decedent’s sisters, the petitioner, to set aside and declare invalid a lifetime trust created by the decedent and two wills which were executed respectively on the date that the trust was created and the date that the trust was amended. The petitioner has moved for the entry of an order directing that the decedent’s other sister (who is sometimes referred to as the respondent even though she and her daughter are both respondents in this proceeding) produce her previous and exist *886 ing wills and/or trusts and any of her wills and/or trusts prepared by Robert Lusthaus, Esq., or his office. The respondents have cross-moved for a protective order with regard to the requested disclosure and for an order dismissing that branch of the petition seeking to declare the decedent’s wills invalid.
The decedent died on April 12, 1996 survived by his two sisters and one brother as his distributees. The petitioner alleges that, prior to the execution of the instruments in question, the decedent had executed testamentary documents in 1978, which essentially provided that his estate was to be divided equally between his two sisters. On August 31, 1995, the decedent allegedly executed a lifetime trust and a will, both of which provided for the same disposition of his estate upon his death. On December 1, 1995, the decedent executed an amendment to the trust and another will, both of which eliminated a $55,000 legacy to the respondent’s son, Saul, and replaced it with a $60,000 legacy to the respondent. The petitioner asserts that, as a result of the changes made in 1995, the two respondents will receive in excess of $2,000,000 while the petitioner will receive less than $168,000. She contends that the 1995 documents are invalid on the grounds that they were executed at a time when the decedent lacked the requisite mental capacity and that they were the product of the respondent’s exercise of undue influence over the decedent.
In support of the contention that the respondent exerted undue influence upon the decedent, the petitioner asserts that the decedent’s relationship with his nephew Saul remained the same between August 31, 1995 and December 1, 1995 and that the only reason that he executed the amended trust and new will on December 1, 1995, deleting Saul as a beneficiary, was because the respondent was displeased with her son. The petitioner argues that, if the respondent made similar changes in either or both her own wills and trusts, this would be further proof that the decedent merely followed the lead of the respondent and was subject to her undue influence. The petitioner further contends that any privilege that might be attached to these documents was waived by the respondent inasmuch as her son Saul testified in a deposition that his mother had told him that she would disinherit him if he did not do what she wanted him to do.
The respondents contend that a protective order should be granted because production of the requested documents will cause “unreasonable annoyance, embarrassment and prejudice *887 in that this information is not relevant * * * and is also protected by the attorney/client privilege”. They also assert that the branch of the petition seeking a judgment with regard to the validity of the wills must be dismissed because the court’s jurisdiction to determine the validity of a will is limited to proceedings instituted pursuant to SCPA article 14 and, therefore, the court lacks subject matter jurisdiction to declare an instrument invalid where no party has sought to have it admitted to probate.
The petitioner’s request for disclosure is viewed in light of the direction in Allen v Crowell-Collier Publ. Co. (21 NY2d 403, 406-407), to liberally construe the words “material and necessary” in CPLR 3101 (a) so that disclosure is required where it can reasonably be concluded that the requested material would be useful in preparing for trial because it might conceivably be used as evidence in chief or rebuttal. Nevertheless, this liberal approach to disclosure neither abrogates recognized privileges nor requires the routine production of documents that are ordinarily considered confidential and private in nature. Thus, my learned colleague Surrogate Roth denied a request that a living person deliver a copy of her will to the objectants in a will contest both because its relevance was limited due to the fact that the will of a living person is ambulatory and can be changed at any time prior to death and because the will was subject to the attorney-client privilege under CPLR 4503 (a) (Matter of Johnson, 127 Misc 2d 1048). Furthermore, the disclosure of documents that are confidential and private in nature, such as tax returns, is “generally disfavored” and their production is compelled only upon a “strong showing of necessity” which necessarily includes a showing “that the information sought was unavailable from other sources” (Walter Karl, Inc. v Wood, 161 AD2d 704, 705, citing Spancrete Northeast v Elite Assocs., 148 AD2d 694; Muller v Sorensen, 138 AD2d 683; Briton v Knott Hotels Corp., 111 AD2d 62; Penn York Constr. Corp. v State of New York, 92 AD2d 1086).
Clearly, it would violate the attorney-client privilege to compel counsel, while the client is alive, to state whether the client had executed a will or to deliver a draft of a will that had not been executed or notes that had been made during a conversation with the client concerning the preparation of a will (Matter of Johnson, supra, at 1050, citing 8 Wigmore, Evidence § 2314 [McNaughton rev ed]). However, there would be no basis to invoke the attorney-client privilege if the will was not prepared by counsel and, instead, was prepared by the *888 maker, whether by filling in blank spaces on a form or otherwise. This raises the question of whether a different rule should prevail with regard to disclosure depending upon whether the maker first gave instructions to counsel, who then prepared the will which was thereafter executed by the maker before at least two witnesses, or whether the maker who is not an attorney prepared the document and then signed it before the witnesses. Even in those instances where the will was prepared by an attorney, it can be argued that the maker of the will is merely being compelled to produce a signed, witnessed writing reflecting the testamentary disposition of the maker’s estate at the time that the document was executed and that no one is being compelled to divulge any confidential communication that was uttered to counsel. Thus, it does not appear that it would violate the attorney-client privilege to inquire of the maker, without allowing any inquiry as to the extent of any attorney’s involvement in drafting the will, whether a particular person is named as a beneficiary in a will executed by the maker. To at least some extent, an executed will might be viewed as similar to a diary setting forth the author’s plans or desires. Nevertheless, and regardless of whether the will instrument in the possession or under the control of the maker falls under the umbrella of the attorney-client privilege, privacy concerns dictate that executed wills of living persons should not lightly or routinely be subject to disclosure in any proceeding inasmuch as compelling such disclosure is almost tantamount to directing individuals to divulge their private thoughts on a subject while they still have the opportunity to change their final acts on that subject.
Based upon a consideration of all of the above, the court concludes that the executed will of a living person that is in the possession or control of that person does not come under the umbrella of the attorney-client privilege regardless of whether it was prepared by an attorney and that its disclosure may be compelled in a civil proceeding. However, due to the privacy concerns, disclosure of the will should not be compelled, as is the case with tax returns and other confidential documents, absent a strong showing of necessity. The party requesting disclosure will rarely be able to meet this requirement because the ambulatory nature of the will renders it of little or no relevance to the underlying issues in most proceedings (see, Matter of Johnson, supra).
Here, the respondent correctly notes that whether or not she and the decedent executed wills at or about the same time *889 containing similar provisions with regard to her son is not, in and of itself, determinative of whether she was able to exert undue influence over the decedent. The court also agrees with the respondent that the fact that she might have told her son that she was going to disinherit him does not constitute a complete waiver of the privilege with regard to the entire will unlike the situation in Bower v Weisman (669 F Supp 602), where the court held that the client’s voluntary production of counsel’s handwritten notes with regard to his will constituted a complete waiver of the attorney-client privilege with regard to that will. Nevertheless, if the respondent’s wills and trusts are not subject to a privilege which bars their disclosure, their production would be helpful to the petitioner in preparing for trial inasmuch as she would clearly be able to adduce proof at the trial that the decedent’s relationship with his nephew remained the same between August and December 1995 and that he only changed his will and amended his trust, deleting the nephew as a beneficiary, when the respondent did likewise in instruments executed by her because she was displeased with her son. It would then be reserved for the trier of the facts to determine whether the decedent voluntarily bequeathed his estate in the same manner as the respondent because he wanted to leave his assets to her or to anyone that she selected or whether the identical testamentary dispositions made by the decedent and the respondent are pieces in a mosaic reflecting undue influence.
Balancing the petitioner’s need for the requested documents in light of the respondent’s son’s testimony that the respondent threatened him with disinheritance against the respondent’s right to privacy with regard to a will that she has the right to change at any time prior to her death, the court concludes that limited disclosure is appropriate. The petitioner may inquire of the respondent as to the following: whether she had executed any trusts or wills that had not been revoked prior to August 31, 1995; whether she executed any trusts or wills between August 31, 1995 and March 1, 1996; and whether she made any disposition to her son Saul in any of these instruments, and, if she did, the nature or amount of the disposition. The petitioner shall not be entitled to know the identity of any other beneficiary under the above instruments. If there are any such instruments, they shall be delivered to the court for an in camera inspection. The petitioner shall provide the court with a transcript of the respondent’s testimony, setting forth the pages and lines dealing with this issue. In the event that the *890 respondent’s testimony is inconsistent with the documents submitted to the court, the portion of the documents that are inconsistent with the testimony shall be provided to the petitioner.
Turning to the respondents’ contention that the court lacks jurisdiction to determine the validity of the two wills executed in 1995, and notwithstanding that they assert that the court lacks subject matter jurisdiction to determine this issue, it appears that their argument is based on procedure and not subject matter jurisdiction. This observation is based upon the respondents’ recognition of the fact that the validity of the wills could certainly be determined in a probate proceeding filed under SCPA article 14. Furthermore, the statutory framework permits a person to apply for letters of administration based .upon a contention that a purported will is invalid and that no proceeding for its probate has been instituted within a reasonable period of time (see, SCPA 1001 [9]; 1003 [5]). SCPA 202 provides that the proceedings enumerated in the SCPA are not “exclusive” and that the court may exercise any jurisdiction granted to it, “notwithstanding that the jurisdiction sought to be exercised in the proceeding is or may be exercised in or incidental to a different proceeding.”
The respondents should not be allowed two bites out of the apple by offering the will for probate only after and in the event that it is established that the trust is invalid due to either or both lack of capacity and undue influence. Inasmuch as the wills and the trust as amended were apparently executed within minutes of each other, there are obviously common questions of law and fact with regard to the validity of each of the instruments even if it is assumed arguendo that the capacity required to execute a will is different from that required to execute a lifetime trust and that the party who bears the burden of proof on this issue might also be different depending on whether a will or a lifetime trust is at issue. It makes more sense to deal with these issues in a consolidated trial than to have to subsequently litigate any issues, not precluded under the doctrine of collateral estoppel, that involve the same facts. Neither the court nor the parties should be required to engage in multiple trials involving issues that can and should be tried in a consolidated proceeding. Nevertheless, the respondents are correct in contending that any person who might be adversely affected by the determination of the issues raised herein should be given notification of the relief requested and an opportunity to be heard.
*891 Accordingly, the court, pursuant to SCPA 1401, directs that, within five days of the date of the entry of the order to be settled herein, the respondents shall file in the court all of the decedent’s 1995 wills which are in their possession or under their control. If these documents are not in their possession or under their control, within the same time period, they are to file an affidavit to that effect and they shall also state to the best of their knowledge where these documents might be presently located and who has possession and control of them. In the event that these wills are filed, any person who has the right to seek the admission of either or both of the instruments to probate may institute a probate proceeding within 30 days of the filing of the instrument. If such a proceeding is instituted, jurisdiction shall expeditiously be obtained over all of the necessary parties and that proceeding shall be consolidated for trial with this proceeding. Furthermore, in the same proceeding, any party who so desires may seek as alternative relief that, in the event that the December 1995 will is denied probate, the August 1995 will should be admitted to probate. Lastly, and regardless of whether any party seeks to probate either or both of the 1995 wills, if the petitioner has failed to serve process in this proceeding upon any person who may receive a beneficial disposition or is nominated as a fiduciary under either will, supplemental process shall issue and be served upon any such person.