727 So.2d 379 (1999)
Sharon Clinton COMPTON, Petitioner,
v.
WEST VOLUSIA HOSPITAL AUTHORITY, et al., Respondents.
No. 98-1684.
District Court of Appeal of Florida, Fifth District.
March 5, 1999.
William H. Ogle of Ledford, Mayfield & Ogle, Ormond Beach, for Petitioner.
Amy D. Shield of Haliczer, Pettis & White, P.A., Fort Lauderdale, for Respondent Humana Health Care Plan, Inc.
No Appearance for Respondent West Volusia Hospital Authority.
Hector A. More of Grower, Ketcham, More, Rutherford, Noecker, Bronson, Siboni & Eide, P.A., Orlando, for Pat Dranginis, D.O. and West Volusia Emergency Physicians, Inc.
W. SHARP, J.
The plaintiff, Sharon Compton, seeks certiorari review of a discovery order rendered by the trial court in her medical malpractice suit. She asks this court to quash the order because it requires her to produce privileged documents, which are unrelated to the issues *380 in this case. We grant the review, and quash that part of the discovery order which ordered production of Compton's Last Will and Testament.
In her fourth amended complaint (the current pleading in the trial court out of which this matter has arisen), Compton alleged she suffered severe brain damage which subjects her to confusion, disorientation and continuing seizures. This injury allegedly stemmed from several seizures Compton suffered while being treated under the Humana Medical Plan in the West Volusia Hospital, by Humana's approved doctorsDr. Mori, her primary care physician, and Dr. Dranginis, who admitted her to the hospital, having seen her in the emergency room.
She claims she had suffered from a seizure disorder controlled with Dilantin, and that prior to their treatment, she had been under the care of Dr. McCormick, a neurologist. However, when she switched her insurance coverage to Humana's HMO she had to change to a Humana physician. Humana provided a list of physicians and directed her to select one. Not knowing any of them, Compton selected Dr. Mori.
In March of 1994, Compton experienced breathing difficulties and was examined by Dr. Dranginis in the emergency room of West Volusia Hospital. He consulted with Dr. Mori and admitted Compton to the hospital. After consulting with Dr. Mori, Dr. Dranginis prescribed Ciprofloxacin and the bronchodilators Aminophylline, and Theo-Dur. Compton argues these drugs should not have been prescribed for her because of their seizure-producing effects and because Ciprofloxacin can enhance the seizure-producing effects of Theo-Dur. They also prescribed Tagamet, which can aggravate a seizure condition.
The day after her admission to the hospital, Compton had several seizures. She claims that the drugs prescribed by Dr. Dranginis and Dr. Mori caused her seizures. Her former doctor was called in, and he discontinued the Ciprofloxacin and Theo-Dur, and ordered a massive dosage of Dilantin. Compton was discharged three weeks later, but she alleged she has had continuing and permanent brain damage caused by the drug-induced seizures.
In this litigation, Compton's attorneys, the firm of Ledford, Mayfield & Ogle, submitted a "Life Care Plan" for her. It sets forth what she claims is necessary to meet her medical, housing, transportation, daily lifestyle and social needs. It concludes that she needs the services of an accountant and bookkeeper, a leased automobile, home modification, furniture and equipment. It estimates her lifetime costs exceed three million dollars ($3,000,000.00).
Humana requested production of substantial economic documentation from Compton. It was advised that the guardian of Compton's property, Alex Ford, Jr. of the law firm of Landis, Graham, French, Husfeld, Sherman & Ford, P.A., had all the information requested. The court ruled that Humana was entitled to this discovery. Compton did not seek review of the discovery orders relating to Humana. Although those orders are not directly related to this proceeding, a list of those documents show what had already been produced.[1] Thereafter, other defendants in this suit, Dr. Dranginis and West *381 Volusia Emergency Physicians, requested production of three items:
(1) Copies of all certificates of title for all property, real or personal that is now or was at the time of the incident that is the subject of this action, in the name of the plaintiff, either individually or with others;
(2) The Last Will and Testament of the plaintiff; and
(3) copies of all inventories of property or assets of the plaintiff.
Compton objected to this discovery request. On June 9, 1998, the trial court granted the defendants' motion to compel. Compton seeks certiorari review of this order in these proceedings.
With regard to the first and third requests for production, Compton argues that they relate to her financial assets and status. Since this is a personal injury case, she argues she has not placed her financial affairs in issue by claiming damages for personal injuries. We agree that ordinarily the financial records of a party are not discoverable unless the documents themselves or the status which they evidence is somehow at issue in the case. Graphic Assocs., Inc. v. Riviana Restaurant Corp., 461 So.2d 1011 (Fla. 4th DCA 1984).
Dr. Dranginis and the Hospital argue that the information sought is relevant because of the extensive list of life care items which Compton claims she requires. We agree. The certificates of title, and inventories of Compton's property and assets are relevant to her economic damage claims. Since she is seeking extensive professional help to manage her assets, the defendants are entitled to have a complete and accurate picture of her true economic condition. Further, much of this information has been or will be produced in connection with Humana's discovery requests, which are not being challenged. Thus, as to those two items, we do not conclude that the trial court departed from the essential requirements of law.[2]
However, we find no precedent to require the production of Compton's unpublished will, in order to determine whether she was competent at the time she executed it. This information can also be obtained in many less intrusive ways, such as asking for the names of the witnesses without the accompanying documents.
Discovery in civil cases must be relevant to the subject matter of each case and be admissible or reasonably calculated to lead to admissible evidence. Allstate Ins. Co. v. Langston, 655 So.2d 91 (Fla.1995). Review by certiorari is appropriate when a discovery order departs from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings, and effectively leaving no adequate remedy on appeal. Langston, 655 So.2d at 94; Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla.1987).
The content of a person's unpublished Last Will and Testament left in the custody of the lawyer who drafted it should, as a general proposition, not be discoverable in a lawsuit such as this. Initially it is not demonstrated in this case to be relevant. If the defendants need to impeach potential beneficiaries because of possible bias, or if they need to establish the testatrix' competency at the time of executing the will, there are other less intrusive ways of going about that. If they need to establish the current extent and amount of the testatrix' estate or properties, there are better ways of accomplishing that goal, which in fact, other discovery in this case should achieve.
A will speaks to events in the futurewhat disposition should be made of properties the testatrix may own, in the future, at the time of death. It truly has no operable present effect on assets currently owned, and it can be changed, revoked or destroyed at any time in the future, prior to the testatrix' death or loss of competence. Even then it may have no effect on the testatrix' assets, if *382 not properly probated, or if shown to be invalidly executed.
The Constitution of the State of Florida contains an express provision insuring the right of privacy to its citizens.[3] To some degree, forced disclosure of personal finances and income is protected against by this provision.[4] The content of a person's will, kept confidential by that person and revealed only to that person's lawyer who prepared it and possibly the witnesses required to execute it, in our view, is a document entitled to as much, if not more, constitutional protection. A person's ultimate plans for disposition of such properties as that person may have when he or she dies, is an extremely private matter and, as discussed above, there are no counter-balancing considerations, which might outweigh and overcome the privacy interest.
We have been unable to find any reported case in this state or any other federal or state court in this country, which has permitted production and discovery of a living person's will, in a case such as this, even though most of those jurisdictions lack the express constitutional privacy protection Florida grants to each of us. Possibly that is because other courts have not found the content of a will, under such circumstances, relevant to the case.
Petitioner also argues and we agree that Compton's will in this case is protected from disclosure and surrender during her lifetime, by the attorney-client privilege. § 90.502(2), Fla. Stat. Communications with an attorney concerning preparation and drafting a will and the will itself, is as privileged as any other attorney-client communications. See Tim A. Thomas, Annotation, Involuntary Disclosure or Surrender of Will Prior to Testator's Death, 75 A.L.R.4th 1144 §§ 2, 3 (1990); VIII JOHN HENRY WIGMORE, WIGMORE ON EVIDENCE § 2314, at 611-17 (McNaughton rev. 1961). In this case, because the will and its contents have not been revealed to others beyond what was required to properly execute it, the attorney-client privilege remains intact. Cf. Bower v. Weisman, 669 F.Supp. 602, 604 (S.D.N.Y.1987) (attorney-client privilege applies to preparation, contents, and execution of will, although privilege can be waived).
Accordingly, we grant the petition for writ of certiorari and strike that part of the order under review which compels production of Compton's will.
Petition for Writ of Certiorari GRANTED.
PETERSON and THOMPSON, JJ., concur.
NOTES
[1] 1. The non-privileged portions of the guardian's 1990 Estate Planning File No. J90-296.

2. The non-privileged portions of the guardian's File No. J95-084 re:
a. Estate Planning sub-file;
b. Guardianship sub-file (correspondence and notes);
c. Incapacity Proceedings sub-file;
d. Information used in compiling tax returns.
3. The portions of the guardian's File No. J95-084 re:
a. Bank statements for guardianship checking account for 9/27/95 through current date;
b. Receipts and disbursements for checking and savings accounts;
c. Bank accounts and ledgers for accounts prior to guardianship;
d. Sharon Clinton Compton's assets information;
e. Receipts for cash items (groceries, travel payments, gasoline) to caregiver;
f. Guardianship sub-file pleadings;
g. Billings for Landis, Graham, French;
h. Creditors and bills related to claims (subject litigation);
i. Tax returns;
j. Canceled checks related to claim (subject litigation, medical, caregiver, attorney and guardian fees, accountant, food, etc.).
[2] See Thompson v. Deane, 703 So.2d 1215, 1216 (Fla. 5th DCA 1997) (discovery issues are matters within the judge's discretion and ruling should be disturbed only upon showing of irreparable harm); Aetna Life Ins. Co. v. Hausman, 598 So.2d 223, 224 (Fla. 5th DCA 1992) (in determining whether confidential information will be subject to discovery, trial court must balance the competing interests to be served).
[3] Article I, section 23, Florida Constitution provides:

Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein...."
[4] Compare Woodward v. Berkery, 714 So.2d 1027, 1035 (Fla. 4th DCA 1998) (Florida's right to privacy encompasses personal finances), with Winfield v. Division of Pari-Mutuel Wagering, Dept. of Bus. Regulation, 477 So.2d 544, 548 (Fla.1985) (individual's right of privacy in their banking records can be overcome by compelling state interest).